**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JIEYI ELECTRONICS CO., LTD., et al, | ) | CASE NO.: 5:14-cv-01996 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| CASE INDUSTRIES, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction.  The Court has been advised, having reviewed the parties' motions and supporting affidavits, and having heard argument from the parties.  For the reasons that follow, the motion is GRANTED.

I.     **FACTS**

For nearly 20 years, Plaintiffs Jieyi Electronics Co., Ltd. and Sichuan Jieyi Electronics Co., Ltd. (collectively "Jieyi") had a business relationship with Defendant Case Industries, Inc. ("Case").   Jieyi made electrical and wiring components for manufacturing, while Case worked as a supplier.   Throughout most of their business dealings, Case would order products from Jieyi, supply them to Case's customer, and then pay Jieyi for the products after receiving payment from its customer.

In 2014, Case continued to order products from Jieyi and sell them to Case customers.  However, instead of using the customer's payments to service their debt to Jieyi, Case kept the money.  In July of 2014, Case executed a Redemption Agreement with its shareholders and redeemed all common stock, leaving individual Defendants,

1

Guenther and Cappi Meyer ("the Meyers"), as Case's sole shareholders.  They also became the company's only employees.

After gaining full control of the company, the Meyers increased their salaries and paid themselves $134,386 for the remaining five months in 2014.[1]   Case's credit line was individually secured by the Meyers.   In the past, Case would carry a credit balance but, while the Meyers were paying themselves almost double their salary from previous years, they also paid $140,000 in order to close out its line of credit.

Meanwhile Case and the Meyers were telling Jieyi that they could not pay the invoices allegedly owed – totaling over $1,360,000.

Despite claims of financial difficulties, it is undisputed that Case's customer paid Case over $1,200,000 on the outstanding invoices. Case kept the money.   Jieyi repeatedly contacted Case and the Meyers about payment on the outstanding invoices.   Time and time again, Case responded that it did not have the money to pay the debt – yet it continued paying the Meyers, exorbitant salaries and bloated travel expenses, all while paying off the debts secured individually by the Meyers.[2]

In September of 2014, Jieyi filed the underlying lawsuit, claiming breach of contract, conversion, fraudulent inducement, and piercing the corporate veil against the Meyers.   Jieyi demanded $1,373,819.27.   Case filed an answer and counterclaim for breach of contract, unjust enrichment, and breach of warranty, demanding in excess of $300,000.   At the status conference on March 18, 2015, Case, through its counsel,

---

1 In 2013, Case paid Guenther and Cappi Meyer $82,552 and $40,404 in salary, respectively.   After taking control of the company in 2014, the Meyers, through Case, paid themselves $206,536.

2 The Court notes that Case increased the Meyers travel expenses after they took control of the company. When this Court issued an order for hearing on the motion for preliminary injunction, the Meyers requested a continuance due to a previously scheduled trip to Florida for personal reasons.   Given the rate of spending and apparent use of corporate assets for the benefit of the Meyers, this trip and others like it, are outstanding issues.

admitted to the Court that it owes Jieyi at least $901,569.36.   However, to date, neither Case nor the Meyers have made payments from the $800,000 left in Case's account in July of 2014.

Pursuant to Jieyi's discovery requests, Case produced financial records through November of 2014, and the Meyers produced certain documents through April of 2014. After reviewing the records and witnessing what appears to be a consistent and rapid spending of the only money Case has on salaries, travel expenses, and credit line payments, Jieyi then filed a motion for preliminary injunction to halt this alarming pattern of dissipating corporate assets.

At the hearing, Case admitted that it has continued to furiously spent down the remaining monies, leaving just $498,000 to-date.   After admitting that Case has been spending the money that could be used to pay Jieyi, this Court questioned Case and the Meyers about whether they were liquidating any other assets that could be used to pay the admitted debt to Jieyi.   Case confirmed that it has no other assets.   The Meyers reluctantly admitted that they recently listed their home for sale, which has $200,000 in equity.

After reviewing the motions, affidavits, and argument at the preliminary injunction hearing, the Court granted leave to allow Jieyi to amend its Complaint to add a claim for fraudulent transfer of assets against Case and the Meyers, individually.   Jieyi has since amended its Complaint.   Given the evidence in this case, Jieyi's motion for preliminary injunction is GRANTED.

## II.    LAW AND ANALYSIS

### A.    <u>Ability of the Court to Issue an Injunction</u>

Case argues that this Court is prohibited from issuing an injunction pursuant to *Grupo Mexicano de Desarrollo, S.A., et al. v. Alliance Bond Fund, Inc., et al.*, 527 U.S. 308 (1999). In *Grupo*, the Supreme Court held that, prior to entry of a money judgment, a district court lacks the power to issue a preliminary injunction preventing the transfer of assets where no lien or equitable interest is claimed. *Id.*  Case ends its argument here.

However, Case fails to acknowledge that the Supreme Court in *Grupo* specifically reserved the question of whether an injunction would be appropriate in a state that has adopted the Uniform Fraudulent Transfers Act, "which has been interpreted as conferring on a nonjudgment creditor the right to bring a fraudulent conveyance claim…[E]liminating the need for a judgment may have altered the common-law rule that a general contract creditor has no interest in his debtor's property." *Id.* at FN7.

Ohio has indeed adopted the Uniform Fraudulent Transfers Act; and as such, *Grupo* does not apply or prohibit this Court from enjoining the transfer of Case's assets without prior Court approval.  *Williamson v. Recovery Ltd. Partnership*, 731 F.3d 608, 629 (6th Cir. 2013) (affirming district court's preliminary injunction where fraudulent conveyance may have occurred).   In *Williamson,* the Sixth Circuit Court of Appeals ruled against the same argument Case now presents.   Specifically, the Sixth Circuit held:

> It is sufficient to note, however, that the majority in *Grupo Mexicano* specifically reserved the question of whether an injunction to protect a legal remedy would be appropriate in cases where the defendants have engaged in fraudulent behavior, [citations omitted], and a number of our sister circuits have interpreted *Grupo Mexicano* to "exempt[ ] from its proscription against preliminary injunctions freezing assets cases involving ... fraudulent conveyances." [citations omitted]. We agree and join our sister circuits.

4

*Id.* at 628.   With the exemption in *Grupo* and the Sixth Circuit's holding in *Williamson*, this Court is within its discretion to issue a preliminary injunction. Given the rate that defendants are dissipating corporate assets, certainly this case cries out for an equitable remedy at this time.

### B.    Preliminary Injunction

When determining whether to issue a preliminary injunction, this Court considers the following four factors:

> (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir.1995)).   This Court must balance the four factors while noting that none should be considered a prerequisite to the grant of a preliminary injunction.   See *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998).

### 1.  Likelihood of Success on the Merits

It is undisputed that Case ordered certain products, and Jieyi supplied those products.   It is further undisputed that Case received the products, sold them, and kept the money from the sale.   Case has already admitted to owing Jieyi $901,569.36 of the nearly $1,300,000 demanded.   As such, Jieyi has a very strong likelihood of success on the merits.

## 2.  Irreparable Injury

Case admits that it sold all of Jieyi's products and kept the money.   At a minimum, Case admittedly received $901,569.36 – yet, in less than one year, the company has spent over $400,000 of that money in excessive salaries to its only two employees and shareholders, the Meyers, and in increased travel expenses for the Meyers, and in paying off the credit line secured personally by the Meyers.   If the Court does not intervene and enjoin further expenditures of the corporate assets, the Defendants will likely dissipate the remaining funds to their own benefit, leaving little to nothing to pay an undisputed debt. The Court will allow Case to petition the Court for approval of certain expenditures, thus limiting the potential harm to payment of necessary and legitimate business expenses.

However, the Court notes from the financial records disclosed during discovery, it appears that Case is essentially winding its business down and will not be a going concern in the extended future.   This further emphasizes the irreparable harm that will result if the assets are not enjoined now, since there will be nothing left to collect if Case completes the process of winding down the company.

Case argues that an injunction is not appropriate because Jieyi has an adequate remedy at law through Ohio's prejudgment attachment statute.   ORC 2715.01 and 2745.011.   However, this remedy requires time to process the motion, hold a hearing, and issue the attachment.   Given the rate that defendants are spending the only real asset owned by the corporation, an injunction is the only effective remedy to preserve the remainder of the money available.   Furthermore, Ohio requires a bond of twice the amount claimed.   Here the bond would be $2,600,000.   Requiring Jieyi to pay such an enormous bond would be crippling to the company, especially considering the vast

6

majority of the debt is undisputed.   As such, prejudgment attachment is inadequate to prevent irreparable harm to Jieyi.

### 3. Substantial Harm to Others

In evaluating the harm to others, it appears that the only people who may be adversely affected are the Meyers.   It appears that the bulk of Case's expenses are in excessive salaries and inflated travel expenses for the Meyers.   With an injunction, Case can still petition the Court to pay the Meyers a salary, and the Court would review this request.   Also, as W-2 employees, in the event of a lay-off, the Meyers would be eligible to apply for unemployment compensation through the government.

Weighing this slight set-back to the risk of irreparable harm to Jieyi, the equities favor preservation of all corporate assets.

### 4. Public Interest

The evidence before this Court demonstrates that ordering the preservation of the remaining corporate assets is overwhelmingly in the public's interest.   It is against public policy to allow parties to enter into a contract with another, receive the contracted products, sell them for full value, and then keep all the money for the individual benefit of the shareholders. ORC 1336 et seq.   Then, when sued, to dissipate their assets through possible fraudulent intent or fraudulent conveyance.   Certainly the public interest weighs in favor of issuing the injunction.

### III.    CONCLUSION

Jieyi's motion for preliminary injunction is GRANTED.   Effective May 7, 2015, the assets of Defendant Case Industries, Inc., including but not limited to, all funds located in the Morgan Bank account, are hereby frozen.   Defendants are not permitted to spend, devalue, sell, encumber, or take any other steps to reduce the equity value of any Case asset

as of May 7, 2015.   Defendants may petition the Court for permission to make verifiable business expenditures, but may only spend, devalue, sell, encumber or otherwise reduce the equity value of the asset upon specific Court approval.

      IT IS SO ORDERED.


Date: May 12, 2015                */s/ Judge John R. Adams*_____
                                        JUDGE JOHN R. ADAMS
                                        UNITED STATES DISTRICT COURT